**Marie LITHUN, Plaintiff and Appellee,**

v.

**Michael DuPAUL, Defendant and Appellant.**

**Civ. No. 890064.**

Supreme Court of North Dakota.

Oct. 24, 1989.

---

Kapsner & Kapsner, Bismarck, and Rodney Karl Feldner, guardian ad litem, Mandan, for plaintiff and appellee; argued by Carol Ronning Kapsner and Rodney K. Feldner.

Michael DuPaul, Minot, pro se.

ERICKSTAD, Chief Justice.

Michael DuPaul appealed, pro se, from a district court judgment restricting Michael's visitation with his two minor children. We affirm.

Michael and Marie Lithun were married in June 1976 and of that marriage had two children, Jason and Tina. Michael and Marie separated in 1984 and were divorced in 1986. Marie was awarded custody of Jason and Tina, and Michael received liberal visitation rights including, but not limited to, visitation on alternating weekends and major holidays, and a 30–day visitation period each summer.

On November 30, 1988, Marie filed a motion requesting the district court to restrict Michael's visitation privileges. Following an evidentiary hearing, the trial court granted the motion restricting Michael to one supervised 30–minute visitation with the children each month, providing, however, that the supervising social worker could "enlarge the visitation" in duration and frequency if it was in Jason and Tina's best interests to do so. From the district court's judgment restricting visitation, Michael filed this appeal.

Michael asserts that the restricted visitation imposed by the district court is improper, unduly restrictive, and unconstitutionally violates Michael, Jason, and Tina's "personal rights."

The standards for awarding custody and visitation in a divorce action are provided under Section 14–05–22, N.D.C.C.:

> *"14–05–22. Custody of children—Visitation rights.*
>
> "1. In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time. Any award or change of custody must be made in accordance with the provisions of chapter 14–09.
>
> "2. After making an award of custody, *the court shall,* upon request of the noncustodial parent, *grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health."* [Emphasis added.]

The trial court's denial of visitation rights will not be overturned on appeal

unless it is clearly erroneous. *C.B.D. v. W.E.B.*, 298 N.W.2d 493 (N.D.1980).

In granting Marie's request to restrict Michael's visitation, the trial court entered the following relevant findings of fact and conclusions of law:

"4. The Court finds that there are changes in the circumstances permitting a modification of the Orders with regard to visitation. The changes in circumstances are as follows:

"(a) The children have almost never been returned on time after the Father's visitation.

"(b) The Father's visitation has had a detrimental effect on the children for the following reasons:

"(1) He makes the children his surrogates for his continued belligerence towards the Mother.

"(2) Prior to visitation, Jason hides and becomes apprehensive. The children don't want to be around the Mother in an attempt to avoid becoming the focus of the Father's animosity towards the Mother.

"(3) The children have developed emotional disorders under the present visitation arrangement.

\* \* \* \* \* \*

"5. On the issue of whether it is in the best interests of the children to restrict their visitation with the Father, the Court concludes that it is in their best interests. The reasons for this are as follows:

\* \* \* \* \* \*

"(e) The conflict between the parents is 99 percent the doing of the Father. The Court gives the following reasons for this conclusion:

"(1) The Father has directly or indirectly made 15 or 18 child abuse reports against the Mother and the foster parents, all of which were found to be ungrounded upon investigation. The Father complained to the point that 12 cases were re-investigated and again found to be ungrounded. The investigator conducted an investigation of both the substance of the allegation of abuse and the method of investigation previously used with reference to the reports.

"(2) Jason benefited from counseling in the summer of 1986 with John Mogren. This benefit continued until the Father got Jason to refuse to cooperate in counseling. This was very detrimental to Jason. The Father has also undermined the children's counseling with Dennis Anderson.

"(3) While the children were in foster care, both parents had supervised visitation.

"(i) The Mother complied with the restrictions on visitation which were beneficial to the children, and as a result of her compliance the visitation was expanded.

"(ii) The Father constantly violated the restrictions on visitation. He refused to refrain from asking about the Mother. He repeatedly put the children in the position of having to choose between the parents. He made verbal threats against John Mogren in February of 1988, and the visit had to be terminated as a result. In February of 1988, he threatened the foster mother in the presence of the children and upset them.

\* \* \* \* \* \*

"7. The Court concludes that any kind of visitation will cause further mental and emotional harm to the children.

\* \* \* \* \* \*

"8. The Court finds that the Father is on a crusade and is incapable of considering the terrible effects of his behavior on the children. The Court believes that the Father has lost contact with reality and the ability to exercise self-control. The Court is inclined to the view that all of the Father's visitation rights should be terminated. However, John Mogren is quite certain that some limited visitation with the Father would be beneficial to the children. The Court is not certain that he is correct but will yield to his expertise. The Court has confidence in the ability of John Mogren, as a social

worker, to conduct supervision of further visitation."

Rule 10(b), N.D.R.App.P., requires the appellant to furnish a transcript of the proceedings. Michael has failed to provide a transcript of the proceedings for this appeal. The appellant assumes the consequences and the risk for the failure to file a complete transcript. *Owan v. Kindel*, 347 N.W.2d 577, 579 (N.D.1984). If the record on appeal does not allow for a meaningful and intelligent review of alleged error, we will decline review of the issue. *Cullen v. Williams County*, 446 N.W.2d 250 (N.D.1989); *Bye v. Elvick*, 336 N.W.2d 106 (N.D.1983).

The file on appeal contains a report of the Wells County Social Service Board filed by John Mogren, as well as reports and letters filed by others involved in this case which tend to support the findings of the district court.[1] These documents may or may not have been properly admitted into evidence, but without a transcript we cannot make this determination.

We conclude that a complete and meaningful review of the district court's action in this case cannot be accomplished without a transcript of the evidentiary proceedings. By failing to submit a transcript, Michael has not met his burden of demonstrating that the trial court's findings of fact are clearly erroneous or that the trial court otherwise committed reversible error.

1. The report filed by social worker John Mogren states in relevant part:
    "Michael is intent to 'prove' that Marie is an unfit parent. This became problematic as the children became involved in the father's endeavor. The children have seen numerous doctors, counselors, therapists and psychologists within the past four years. Taking this to light, it is easy to understand why they began to verbalize that they felt 'caught' between their parents.
    \*   \*   \*   \*   \*
    "[I]t was observed that Michael took measures which resulted in causing maladjustment for the children. He would persist in these actions even after they were brought to his attention. The end result was that stress produced in the children was manifested in the form of depression, adjustment disorder, sleep disturbance and continual anxiety.

The motions for attorney fees by Marie and Rodney Feldner, the children's Guardian Ad Litem, are denied. Costs on appeal are taxed against appellant, Michael DuPaul.

THE JUDGMENT IS AFFIRMED.

VANDE WALLE, GIERKE, LEVINE and MESCHKE, JJ., concur.

\*   \*   \*   \*   \*   \*

"It has been this agency's observation, by supervised visits and by his letters to the children, that he [Michael] will not refrain from following past problematic behaviors.
\*   \*   \*   \*   \*   \*
"*RECOMMENDATIONS:*
\*   \*   \*   \*   \*   \*
"2. *Visitation:* It would appear, in light of this agency's observations as well as the recommendations of the psychologists, that supervised visitation could continue for Michael DuPaul with his children. We would recommend that these visitation[s] be limited in time and frequency which could increase if Mr. DuPaul does not utilize the visitation as a means to perpetuate or increase the past anxiety and distress in Jason and Tina."