**Bruce DSCHAAK, Plaintiff and Appellee,**

**v.**

**Janice DSCHAAK, Defendant and Appellant.**

Civ. No. 910032.

Supreme Court of North Dakota.

Jan. 9, 1992.

Dwight C.H. Kautzmann of Bair, Brown & Kautzmann, Mandan, for defendant and appellant.

Larry W. Quast of Hagen, Quast & Alexander, Beulah, for plaintiff and appellee.

LEVINE, Justice.

In this appeal from a judgment of divorce, Jancie Dschaak challenges that portion of the judgment which grants custody of her son to her ex-husband, Bruce Dschaak, and grants her no extended summer visitation. We affirm as to custody but reverse and remand for modification of visitation.

Jancie and Bruce were married in August 1983 and lived in the Beulah area. They had one son, born in April 1985. In June 1989, Jancie left Beulah with her child and traveled to West Virginia where she attempted to gain custody. But West Virginia, in accordance with the Uniform Child Custody Act, declined to exercise jurisdiction, deferring to North Dakota. On July 17, 1989, Bruce filed for divorce in North Dakota and sought custody of the child. Jancie returned to Bismarck, North Dakota. She intended to move back to West Virginia but she would continue to live in Bismarck if that were necessary to obtain custody.

After a hearing, the trial court awarded temporary custody to Bruce and gave Jancie extensive visiting privileges. During the trial which took four days, Jancie alleged that Bruce physically and verbally abused her throughout the marriage. Bruce countered that Jancie, on several

occasions, "slapped him across the face." The trial court found that Bruce and Jancie "focused on what he or she perceives to be the shortcoming of the other, while at the same time acknowledging that the relationship between parent and child is positive for both and that both are capable of giving the child love, affection, and proper care."

The trial court, in accordance with the child custody factors listed in NDCC § 14–09–06.2 [1] also found:

"I think there exists love, affection, and positive emotional ties between the child and both parents and that both parents are equally capable and disposed to give the child love, affection, and guidance, and to continue the education of the child, although Mr. Dschaak may be more rigid in this area. Both parents are disposed to provide the child with food, clothing, medical and other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs. The child has lived all his life in a stable, satisfactory environment, and it is desirable that continuity be maintained.

"The parents are both morally fit and are both mentally and physically healthy. The child has a good home, school, and community record. The child has expressed no preference and is too young to have any significance accorded to such a preference had it been expressed. Maintaining a relationship with each parent is equally important to [the child].

"Mr. Dschaak's family unit, extended and otherwise, is settled, as is his future. It is known where the child will be living and the environment in which he lives. That is less true of Mrs. Dschaak's situation.

"I find it would be in the best interests of [the child] to grant his custody to Mr.

---

1. NDCC § 14–09–06.2 states:

"1. For the purposes of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. The existence of domestic violence. If the court finds that domestic violence has occurred, the court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm. As used in this subdivision, 'domestic violence' means domestic violence as defined in section 14–07.1–01.

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. Any other factors considered by the court to be relevant to a particular child custody dispute.

"2. In any proceeding under this chapter, the court, at any stage of the proceedings after final judgment, may make orders about what security is to be given for the care, custody, and support of the unmarried minor children of the marriage as from the circumstances of the parties and the nature of the case is equitable."

In 1991, the North Dakota legislature modified NDCC § 14–09–06.2(j), effective July 1, 1991 (S.L.1991, Ch. 148 § 2), to require the court, upon a finding of domestic violence, to "cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm." That amendment does not apply because the instant case commenced before July 1, 1991. *Freed v. Freed,* 454 N.W.2d 516, 518 n. 1 (N.D.1990).

Dschaak with extensive visitation to Mrs. Dschaak."

The court then fashioned alternative visitation schedules in an attempt to accommodate Jancie's uncertainty over whether she intended to stay in North Dakota. If Jancie continued to reside near Beulah, there was to be visitation one weekend a month, one week during the Christmas holidays, alternating state-recognized holidays and alternating birthdays of the child. But there was no provision for extended summer visitation if she stayed in North Dakota. If Jancie left North Dakota, she would have six weeks' extended summer visitation and, in every other year, one week during the Christmas holidays.

On appeal, Jancie raises two issues: (1) whether the district court's award of custody to Bruce was clearly erroneous because the court did not consider the alleged domestic violence inflicted upon Jancie by Bruce; (2) whether the award of visitation was clearly erroneous because it denied Jancie extended summer visitation if she lived in North Dakota.

### CHILD CUSTODY

■ A trial court's determinations of child custody are treated as findings of fact. *Freed v. Freed*, 454 N.W.2d 516 (N.D.1990). Findings of fact are presumptively correct and are deemed clearly erroneous only when the reviewing court, based upon the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* A trial court need not make an express finding as to each statutory factor that may affect the best interests of a child but it should do so as to each one that is factually significant in a particular case. *See Bader v. Bader*, 448 N.W.2d 187 (N.D.1989).

Jancie contends that the trial court did not consider the issue of domestic violence when it determined child custody.[2] Jancie points to that portion of the trial court's memorandum opinion, findings and decision which reviewed the statutory factors of NDCC § 14–09–06.2. She says that the court there mentions all the factors with one exception, domestic violence. Jancie argues that the omission of domestic violence from the court's analysis of the statutory factors affecting the child's best interests indicates that the court made a mistake by not evaluating or considering the impact of domestic violence.

This argument, while superficially appealing, does not withstand scrutiny. Although the trial court did not have to make a finding on each statutory factor, it did so anyway with but one exception, domestic violence. Without more, we would be concerned by the trial court's expression of opinion on every statutory child custody factor except domestic violence. However, the trial court, in another part of its written decision, did address the issue of domestic violence: "Mrs. Dschaak was 20 years old when the parties married and was somewhat immature, a fact which Mr. Dschaak instinctively seemed to recognize and take advantage of in a negative way by verbally abusing her, imposing unrealistically high standards on her, and being overly controlling...." The trial court thus considered the evidence of Bruce's abuse and found verbal abuse, and inferentially, no physical abuse and no infliction of fear of imminent physical harm. Consequently, we reject Jancie's claim that the trial court overlooked her allegations of physical and verbal abuse.

We conclude that the custody order was not clearly erroneous for failure of the trial court to consider evidence of domestic violence.[3]

2. NDCC § 14–07.1–01(2) defines "domestic violence" to include:
"[P]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault, not committed in self-defense, on the complaining family or household members."

3. The legislature amended NDCC § 14–05–22(3), effective July 1, 1991, to state that when a court finds credible evidence of the occurrence of domestic violence, a rebuttable presumption arises that it is not in the best interests of the child to award custody or grant visitation to the abusive party. (S.L.1991, ch. 148 § 2.) The instant case commenced before the effective date of the amendment, so the amended statute does not apply. *See Freed v. Freed*, 454 N.W.2d 516, 518 (N.D.1990).

## SUMMER VISITATION

■ A trial court's determination on visitation is treated as a finding of fact which will not be reversed unless it is clearly erroneous. *Quirk v. Swanson*, 368 N.W.2d 557 (N.D.1985); *see Schempp–Cook v. Cook*, 455 N.W.2d 216 (N.D.1990). The purpose of visitation is to promote the best interests of the child. *Muraskin v. Muraskin*, 336 N.W.2d 332 (N.D.1983). Ordinarily, visitation between a child and noncustodial parent is viewed as being in the best interests of the child and not merely a privilege of the noncustodial parent but a right of the child. *Persons v. Persons*, 396 N.W.2d 744 (N.D.1986); *Burich v. Burich*, 314 N.W.2d 82 (N.D.1981). The noncustodial parent is deprived of visitation only if "visitation is likely to endanger the child's physical or emotional health." NDCC § 14–05–22(2).

■ Jancie argues that the trial court's visitation order was clearly erroneous because it denied her extended summer visitation with her child if she remained in North Dakota. She argues that it is in her child's best interests to be granted some extended summer visitation with her because a "stable time period" for "meaningful quality visitation" would foster the child-parent relationship in a positive manner apart from what is provided by scattered weekend visits. Bruce argues that Jancie is only concerned with what is best for her, not the child, and says that Jancie has not cited any authority which substantiates her position that extended summer visitation is in their son's best interests.

However, our research indicates that, absent a reason for denying it, some form of extended summer visitation with a fit noncustodial parent is routinely awarded if a child is old enough. *E.g., Lithun v. DuPaul*, 447 N.W.2d 297 (N.D.1989) ["liberal visitation" including thirty days during the summer plus alternating weekends and holidays revoked only upon conclusion by trial court that visitation with the noncustodial parent had a detrimental effect on the children]; *Moody through Sax v. Moody*, 405 N.W.2d 19 (N.D.1987) ["reasonable visitation" included one weekend a month plus four weeks' summer visitation upon the child's completion of the first grade]; and *Persons v. Persons*, 396 N.W.2d 744 (N.D. 1986) [visitation award of every Thursday, alternating weekends and two consecutive summer weeks upheld]. *See also Bergstrom v. Bergstrom*, 320 N.W.2d 119 (N.D. 1982) [noncustodial parent "shall be entitled to designate a two week period of summer visitation during the summer months of each year for purposes of vacationing with the child."].

Of course, the cases we rely upon simply affirm trial court decisions. But our point and the point of the cases is that it appears to be customary practice to provide extended summer visitation when children are old enough. Jancie requested such visitation but the trial court, without explanation, denied it when it determined visitation. Absent an explanation or reason for the trial court's failure to grant some sort of extended summer visition if Jancie remains in North Dakota, we conclude it erred in that regard. We find no evidence that would lead us to believe that the trial court would find that extended summer visitation would be detrimental to the child if Jancie remains in North Dakota. To the contrary, the trial court determined Jancie to be mentally, physically and morally fit and characterized her relationship with her child as excellent, with love, affection and positive emotional ties between them. It also awarded extended visitation in the event Jancie moved from North Dakota.

We reverse that portion of the judgment that denies extended summer visitation and remand so the parties can present to the trial court their agreement for such visitation or their respective proposals for visitation. The trial court shall decide the duration of the extended summer visitation consonant with the best interests of the child. The remainder of the judgment is affirmed. Bruce asked for attorney's fees under NDRCivP 38. Obviously, this appeal is not frivolous and we deny the request.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

Justice H.F. GIERKE, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.