2012 ND 248

**Christina DEYLE, Plaintiff
and Appellant**

v.

**Eric DEYLE, Defendant and Appellee.**

No. 20120157.

Supreme Court of North Dakota.

Nov. 30, 2012.

Jerilynn Brantner Adams, Fargo, ND, for plaintiff and appellant.

John D. Bullis and Megan Elizabeth Kummer (appeared), Wahpeton, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Christina Deyle appeals the district court judgment granting Eric Deyle primary residential responsibility of the parties' two minor children. We affirm the district court's award of primary residential responsibility to Eric Deyle. We reverse and remand for further proceedings because the district court failed to adequately explain its denial of summer parenting time, interim child support and attorney fees.

I

[¶ 2] Christina Deyle and Eric Deyle were married on September 8, 2007 and have two children together: H.F.D. born in 2004 and C.E.D. born in 2008. The parties separated in June 2010 when Eric Deyle left the marital home and moved into an apartment. Christina Deyle and the children remained in the marital home in Milnor, North Dakota until December 2011 when a foreclosure action was commenced after Eric Deyle ceased making mortgage payments. Christina Deyle and the children moved in with Christina Deyle's parents in Milnor. Christina Deyle was the primary caretaker of the children throughout the parties' separation.

[¶ 3] Christina Deyle commenced a divorce action and sought primary residential responsibility, spousal support and child support. Following trial, the district court awarded Eric Deyle primary residential responsibility and granted Christina Deyle parenting time. The district court did not award attorney fees to either party nor did it award interim child support to Christina Deyle.

II

[¶ 4] Christina Deyle argues granting Eric Deyle primary residential responsibility was clearly erroneous. "A district court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Morris v. Moller*, 2012 ND 74, ¶ 5, 815 N.W.2d 266. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* (quoting *Doll v. Doll*, 2011 ND 24, ¶ 6, 794 N.W.2d 425). In reviewing a district court decision, this Court "will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. This is particularly relevant for custody decisions involving two fit parents." *Marsden v. Koop*, 2010 ND 196, ¶ 8, 789 N.W.2d 531 (quoting *Heinle v. Heinle*, 2010 ND 5, ¶ 6, 777 N.W.2d 590).

[¶ 5] "District courts must award primary residential responsibility of children to the party who will best promote the children's best interests and welfare." *Morris*, 2012 ND 74, ¶ 6, 815 N.W.2d 266. "A district court has broad discretion in awarding primary residential responsibility, but the court must consider all of the relevant factors under N.D.C.C. § 14–09–06.2(1)." *Morris*, at ¶ 6. Here, the district court found factors (c), (d), (h) and (m) favored Eric Deyle. Factor (b) favored Christina Deyle. Factors (e) and (g) favored neither party, and factors (i), (j), (k) and (*l*) were irrelevant.

### A

[¶ 6] Christina Deyle argues the district court erred in finding factor (d) favored Eric Deyle. Under factor (d) the court considers "[t]he sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community." N.D.C.C. § 14–09–06.2(1)(d). The district court found that "it is in the children's best interest to stay in Milnor to be near Christina's family (for both children) and to maintain continuity in community activities and school (at this time for the older child)." The district court explained:

> "Christina's living situation is likely going to change at least two and perhaps three times in the foreseeable future; moving out of her parent's home into another home in Milnor, possibly moving to Wahpeton for school, and then moving to find work as a hygienist. While I commend her for continuing her education, stability and continuity is what is best for these children."

Christina Deyle argues the district court erred as a matter of law by speculating about future events and by making findings that were not supported by any evidence.

[¶ 7] The district court did not misapply the law in its analysis regarding factor (d) by examining the effects of a potential future relocation by Christina Deyle. Traditionally, "[f]actor (d) require[d] consideration of the stability and quality of the child's *past* environment." *Marsden,* 2010 ND 196, ¶ 19, 789 N.W.2d 531 (quotation omitted) (emphasis added). "[F]actor (e) use[d] a forward-looking approach to the stability of the family unit, its interrelations and environment, versus the backward-looking factor (d)." *Lindberg v. Lindberg,* 2009 ND 136, ¶ 13, 770 N.W.2d 252 (quotation omitted). Section 14–09–06.2(1), N.D.C.C., was amended in 2009, resulting in substantive changes to several of the best interest factors. 2009 N.D. Sess. Law ch. 149, § 5. Pre–2009 factors (d) and (e) were combined to create the amended factor (d). Sherry Mills Moore, chair of the Custody and Visitation Task Force formed by the State Bar Association of North Dakota, provided testimony to the legislature regarding the purpose of the amendments to N.D.C.C. § 14–09–06.2(1) contained in Senate Bill 2042. Moore testified that "[t]he proposed language in paragraph (d) combines and clarifies the concepts embodied in existing paragraphs (d) and (e)." A plain reading of the pre- and post-amendment factors confirms this.

[¶ 8] Pre–2009 factor (d) directed consideration of "[t]he length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity." N.D.C.C. § 14–09–06.2(1)(d) (2009). Pre–2009 factor (e) directed consideration of "[t]he permanence, as a family unit, of the existing or proposed custodial home." N.D.C.C. § 14–09–06.2(1)(e) (2009). Current factor (d) incorporates consideration both of the length of time

the child has lived in a stable home as well as the permanence or stability of the home environment and adds the forward-looking consideration of "the desirability of maintaining continuity in the child's home and community." N.D.C.C. § 14–09–06.2(1)(d).

[¶ 9] Factor (d) no longer restricts the district court's analysis to past events. After the legislature incorporated pre–2009 factors (d) and (e) into the current factor (d), district courts now must look both forward and backward, just as the district court did in this case. The district court found granting Eric Deyle primary residential responsibility would provide greater continuity and stability because of Christina Deyle's potential relocations. This finding was supported by the record. The district court's finding factor (d) favored Eric Deyle is not clearly erroneous both because it is a correct application of law and because it is supported by the evidence.

### B

[¶ 10] Christina Deyle argues the district court erred in finding factor (e) favored neither party. Courts applying factor (e) consider "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14–09–06.2(1)(e). The district court found "the parties are both willing and able to foster the parental relationship of the other" and both parties recognized the importance of the other parent's role in the children's lives. The record reflects testimony from both Christina Deyle and Eric Deyle supporting this finding. The district court's finding factor (e) favored neither party is not clearly erroneous because it is supported by the evidence.

### C

[¶ 11] Christina Deyle argues the district court erred in finding factor (h)

favored Eric Deyle. Courts applying factor (h) consider "[t]he home, school, and community records of the child and the potential effect of any change." N.D.C.C. § 14–09–06.2(1)(h). The district court noted the possibility of a relocation by Christina Deyle and also found Eric Deyle was involving the older child in the community. Christina Deyle argues the district court erred by speculating as to Christina Deyle's future.

[¶ 12] Factor (h) expressly requires that the court consider the potential effects of change. The court must look forward under this factor to determine whether foreseeable changes could impact a child's life in the home, school and community. Here, the district court noted the reasonable possibility of future relocation by Christina Deyle due to her anticipated education and employment in the dental field and the lack of those jobs in the Milnor area. From that evidence, the district court found Christina Deyle's likely move would have an adverse impact on the children. The district court also found Eric Deyle actively involved the older child in community activities. These findings are supported by the record. The district court's finding factor (h) favored Eric Deyle is not clearly erroneous because it is supported by the evidence.

### D

[¶ 13] Christina Deyle argues the district court erred in finding factor (k) favored neither party because the district court did not consider the close bond the children have with their maternal grandparents. Under factor (k) the court considers:

> "The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or

frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons."

N.D.C.C. § 14–09–06.2(1)(k).

[¶ 14] The district court found no potential negative impact by any new romantic partners of the divorcing parents. We have explained that factor (k) addresses the negative influence of third parties, not the positive influence of extended family. *Schmidt v. Schmidt*, 2003 ND 55, ¶ 10, 660 N.W.2d 196. The district court properly considered the children's close bond with their maternal grandparents in its factor (m) analysis. The district court did not misapply the law, and its finding factor (k) favored neither party is not clearly erroneous.

E

[¶ 15] Christina Deyle argues the district court erred in finding factor (m) favored Eric Deyle. Under factor (m) the court considers "[a]ny other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute." N.D.C.C. § 14–09–06.2(1)(m). The district court found that the children's maternal grandparents played a significant role in their lives and that Eric Deyle fostered the children's relationship with their maternal grandparents. The district court was concerned with the possibility of Christina Deyle's relocation and the potential negative impact a move would have on the children. Eric Deyle testified he intended to remain in the Milnor area, and Christina Deyle testified about her intent to become a dental hygienist and the possibility of a future move to find work. The record supports the district court's findings. The district court's finding factor (m) favored Eric Deyle was not clearly erroneous.

[¶ 16] We conclude the district court did not err in analyzing the best interests factors under N.D.C.C. § 14–09–06.2 because the court's findings properly applied the law and were supported by the evidence.

III

[¶ 17] Christina Deyle argues the district court's award of parenting time was clearly erroneous. A trial court's determination of parenting time is a finding of fact subject to the clearly erroneous standard of review. *Krueger v. Krueger*, 2011 ND 134, ¶ 12, 800 N.W.2d 296. "In awarding visitation to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113. "We have stated visitation between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child." *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896.

[¶ 18] Christina Deyle argues the district court erred by not awarding extended parenting time during Christmas vacation and summer break. The district court stated it would adopt Eric Deyle's proposed parenting time plan, but ultimately, it did not do so in the final order or judgment. Eric Deyle's plan provided for extended parenting time during Christmas vacation, summer break and an extra hour during the week. However, we have held, "[I]f there is a discrepancy between a trial court's oral and subsequent written statements, the written statements control." *Brown v. Brodell*, 2008 ND 183, ¶ 12, 756

N.W.2d 779 (citing *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 26, 705 N.W.2d 836).

[¶ 19] The district court did not explain the lack of extended summer visitation. "[A]bsent a reason for denying it, some form of extended summer visitation with a fit non-custodial parent is routinely awarded if a child is old enough." *Dschaak v. Dschaak*, 479 N.W.2d 484, 487 (N.D.1992); *see Tibor v. Tibor*, 2001 ND 43, ¶ 14, 623 N.W.2d 12 (holding trial court's order for seven weeks of summer visitation not clearly erroneous); *Schiff v. Schiff*, 2000 ND 113, ¶ 30, 611 N.W.2d 191 (holding trial court did not err in granting father extended summer visitation). In *Dschaak*, we held, "Absent an explanation or reason for the trial court's failure to grant some sort of extended summer visitation ... we conclude it erred in that regard." 479 N.W.2d at 487. Similarly, the district court's failure here to explain the lack of extended summer parenting time was error, and remand is necessary for reconsideration and a reasoned explanation of the district court's ruling.

## IV

[¶ 20] Christina Deyle argues the district court abused its discretion by failing to award her back child support. "[A] district court's decision whether to award past child support is discretionary and will not be overturned on appeal unless the court has abused its discretion." *Hagel v. Hagel*, 2006 ND 181, ¶ 7, 721 N.W.2d 1. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *Id.* at ¶ 9. "When ... the district court provides no indication of the evidentiary and theoretical basis for its decision and the basis is not otherwise ascertainable in the record, we are left to speculate whether factors were properly considered and the law was properly applied, leaving us unable to perform our appellate function." *Id.*

[¶ 21] Here the district court found "Eric [Deyle] did not pay any child support during the period of separation. [Eric Deyle] had an obligation to support his children during that period of time." Despite this finding, the district court did not award interim child support to Christina Deyle and did not explain the denial. As in *Hagel*, we are left to speculate whether factors were properly considered and the law was properly applied, leaving us unable to perform our appellate function. We therefore remand for reconsideration and a reasoned explanation of the district court's ruling.

## V

[¶ 22] Christina Deyle argues the district court abused its discretion by not awarding attorney fees and costs to Christina Deyle. "Courts have 'considerable discretion' in awarding attorney fees under N.D.C.C. § 14–05–23, and the court's decision will not be reversed on appeal unless the court abused its discretion." *Stephenson v. Stephenson*, 2011 ND 57, ¶ 30, 795 N.W.2d 357. "[T]he primary standard governing an award of attorney fees in a divorce action is one spouse's needs and the other spouse's ability to pay." *Kelly v. Kelly*, 2011 ND 167, ¶ 34, 806 N.W.2d 133. "The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case." *Wagner v. Wagner*, 2007 ND 101, ¶ 23, 733 N.W.2d 593 (quotation omitted).

[¶ 23] Christina Deyle testified she did not have the ability to pay her attorney

fees. The district court found Eric Deyle had the ability to pay his attorney fees. The district court concluded "[n]o costs or attorney fees are awarded to either party[,]" but it provided no explanation for the denial. We are left to speculate whether factors were properly considered and the law was properly applied, leaving us unable to perform our appellate function. *Hagel*, 2006 ND 181, ¶ 9, 721 N.W.2d 1. We remand for reconsideration and a reasoned explanation of the district court's ruling.

## VI

[¶ 24] We affirm the district court's judgment awarding primary residential responsibility of the children to Eric Deyle. We reverse and remand the district court's award of parenting time, denial of interim child support and denial of attorney fees for further proceedings consistent with this decision.

[¶ 25] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., concur.

[¶ 26] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.

MARING, Justice, dissenting.

[¶ 27] I concur in Parts IV and V of the majority opinion. However, I am of the opinion that the trial court's findings of fact and conclusions of law awarding primary residential responsibility to Eric Deyle were induced by an erroneous application of factors (d), (h), and (m), N.D.C.C. § 14–09–06.2(1). Therefore, I, respectfully, dissent from Part II.

## I

[¶ 28] The trial court must award primary residential responsibility to the parent who will better promote the children's best interests. *Hammeren v. Hammeren*, 2012 ND 225, ¶ 6, 823 N.W.2d 482. In awarding primary residential responsibility, the trial court must consider the best interests of the child and all the relevant factors under N.D.C.C. § 14–09–06.2(1). *Id.* A trial court's award of primary residential responsibility is a finding of fact, which is "clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* at ¶ 7.

[¶ 29] In awarding primary residential responsibility to Eric Deyle, the trial court found factor (b) "strongly" favored Christina Deyle; factor (c) "slightly" favored Eric Deyle; factors (d), (h), and (m) favored Eric Deyle; and the remaining best interests factors either favored neither party or were irrelevant. I believe Christina Deyle's role as primary caretaker, the trial court's improper speculation of where Christina Deyle will reside two years post-divorce, and Eric Deyle's failure to financially support his children resulted in findings unsupported by the record and a misapplication of factors (d), (h), and (m).

### 1. Primary Caretaker

[¶ 30] In 2009, the legislature amended N.D.C.C. § 14–09–06.2(1), the best interest factors. *See* 2009 N.D. Sess. Laws ch. 149, § 5. The amendment combined the pre-amended factor (d), "the length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity," with the pre-amended factor (e), "the permanence, as a family unit, of the existing or proposed custodial home," into the new factor (d), "the sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in

each parent's home, and the desirability of maintaining continuity in the child's home and community." *Id.*

[¶ 31] The amendment was intended to combine and clarify the factors, but not to change the meaning or application of either factor. *See Hearing on S.B.2042 Before the Senate Judiciary Comm.*, 61st N.D. Legis. Sess. (Jan. 19, 2009) (testimony of Attorney Sherry Mills Moore, State Bar Assoc. of N.D., lobbyist). Moore explained:

> Proposed paragraph (d) requires the court to look at the sufficiency and stability of each parent's home environment, the length of time the child has lived in each home and the desirability of maintaining continuity in the child's home and community. The amendments are not intended to eliminate the court's ability to consider the permanence of the family unit.

*Id.* Therefore, this Court's interpretation of the new factor (d) should be consistent with this Court's interpretation of the pre-amended factors (d) and (e).

[¶ 32] Although this Court does not presume custody in favor of the primary caretaker, the concept of the primary caretaker "inheres in the statutory factors" and deserves recognition. *Gravning v. Gravning*, 389 N.W.2d 621, 622 (N.D. 1986); *see also Heggen v. Heggen*, 452 N.W.2d 96, 101–02 (N.D.1990); *Von Bank v. Von Bank*, 443 N.W.2d 618, 620 (N.D. 1989).

> While a trial court may not rely upon the primary caretaker status to the exclusion of all other factors, it certainly should consider which parent served as the primary caretaker. N.D.C.C. § 14–09–06.2(1)(a), (b), (d), (e); *see also, e.g., Wolf v. Wolf*, 474 N.W.2d 257 (N.D. 1991); *Dinius [v. Dinius*, 448 N.W.2d 210 (N.D.1989)] (Levine, J., dissenting). Established patterns of care and nur-

ture are relevant factors. *Heggen v. Heggen*, 452 N.W.2d 96 (N.D.1990). "Continuity in a child's relationship with the closest, nurturing parent is ... a very important aspect of stability." *Roen v. Roen*, 438 N.W.2d 170, 174 (N.D.1989).

*Foreng v. Foreng*, 509 N.W.2d 38, 40 (N.D. 1993). If factors (d) and (e) are properly construed, "they go to the overriding importance of the stability, continuity, and permanence embodied in a primary caretaker's relationship with the children." *Dinius*, 448 N.W.2d at 219 (Meschke, J., dissenting) (factors (d) and (e) were named factors (4) and (5), respectively, at the time of that opinion; however, the substantive language remained unchanged).

[¶ 33] Here, the trial court found Christina Deyle to be the primary caretaker. However, the trial court erred when it found this to weigh in her favor only under N.D.C.C. § 14–09–06.2(1)(b). A primary caretaker can be given consideration under factor (b); however, to reduce the primary caretaker to consideration of whether a person provides "adequate food, clothing, shelter, medical care, and a safe environment" undermines the psychological relationship shared by a child and the primary caretaker. *See* N.D.C.C. § 14–09–06.2(1)(b). A primary caretaker has intimate interactions with the child creating a vital bond. *Gravning*, 389 N.W.2d at 625 (Levine, J., dissenting). Consideration of this social and emotional bond must be given weight under N.D.C.C. § 14–09–06.2(1)(d)." *Stoppler v. Stoppler*, 2001 ND 148, ¶ 31, 633 N.W.2d 142. The trial court's findings under factor (d) completely ignored Christina Deyle's role as primary caretaker and is, therefore, clearly erroneous.

[¶ 34] Further, factor (d) focuses on the emotional stability as well as the physical environment of a child's past and fu-

ture home. The pre-amended version of N.D.C.C. § 14–09–06.2(1)(d) "addresses past stability of [the] environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting. It also addresses the quality of that past environment, and the desirability of maintaining continuity." *Stoppler*, 2001 ND 148, ¶ 9, 633 N.W.2d 142. A prior custodial arrangement should be considered when examining factor (d). *Id.*

[¶ 35] To decide factor (d) solely based on the children remaining in a location wrongfully places the emphasis on geography rather than parental relations. *See Stoppler*, 2001 ND 148, ¶ 31, 633 N.W.2d 142 (citing *Craig v. McBride*, 639 P.2d 303, 308 (Alaska 1982) (Rabinowitz, C.J., concurring) (explaining that "[u]nder factor (d), 'stability is often a function of parental attitude and not of geography'")). I continue to be troubled by the emphasis on the continuity of the child's physical setting over the importance of the continuity of the parent-child relationship under factor (d).

### 2. Speculation of Move

[¶ 36] Unsupported speculation of where Christina Deyle will be two years post-divorce pervade the trial court's findings that factors (d), (h), and (m), N.D.C.C. § 14–09–06.2(1), favored Eric Deyle and are, therefore, clearly erroneous.

[¶ 37] The trial court found that "Christina's living situation is likely going to change at least two and perhaps three times in the foreseeable future[:] moving out of her parent[s'] home . . ., possibly moving to Wahpeton for school, and then moving to find work as a hygienist." Any reliance on Christina Deyle's move from her parents' home is misplaced as a basis to find against her under factors (d), (h), or (m). The record establishes that Eric Deyle did not provide a stable home for the children in the interim, and he failed to pay the mortgage forcing the children and Christina Deyle out of their home. Christina Deyle took the children with her to her parents' home. Any move from her parents' home is a direct result of Eric Deyle's actions and should not be weighed against Christina Deyle.

[¶ 38] Any reliance on subsequent moves is not supported by the record. The trial court found Christina Deyle is likely to move for school. However, the record is completely void of any reference to her moving for school. Further, Christina Deyle testified that she is applying to the dental hygienist program, but has not yet been accepted. When asked about the dental hygienist program, Christina testified:

THE COURT: . . . During your testimony you indicated that it's going to take you about 2 1/2 years to finish dental hygienist school after you're accepted. My questions are, are you currently accepted or what's the situation?

MS. DEYLE: I find out in April.

THE COURT: So you are not accepted at this point?

MS. DEYLE: No.

THE COURT: You will find out. All right. You're, based on your testimony, anticipating that you will be accepted is my understanding. Is that correct?

MS. DEYLE: Hopefully. Yeah. Yes.

Based on this testimony, the trial court found Christina Deyle was likely moving to Wahpeton for school, yet she has not been accepted into the program. Further, Christina Deyle currently attends classes in Wahpeton while living with her parents in Milnor. There is no basis for the trial court to speculate such an arrangement would be different if she attended the dental hygienist program.

[¶ 39] The trial court also found Christina Deyle would likely move out of the area after she finishes school. However, Christina Deyle testified she would like to remain in the Milnor area after she finishes school:

[COUNSEL]: Okay. And your long term employment goal would be to be a dental hygienist?

[MS. DEYLE]: Yes.

[COUNSEL]: Okay. And where would you plan to do that work?

[MS. DEYLE]: Hopefully around the area.

[COUNSEL]: Are you aware of whether or not there is positions in the area in that field?

[MS. DEYLE]: I am not.

. . . .

[COUNSEL]: What is your, you mentioned you're currently living with your parents, what's your long term housing plan?

[MS. DEYLE]: Once I can save up my money get affordable housing for the kids and I.

[COUNSEL]: And where would you be looking for housing?

[MS. DEYLE]: In the Minor area for now.

[¶ 40] The trial court speculated, based on the fact Christina Deyle was unaware of dental hygienist jobs in the Milnor area, that she would move away from Milnor. However, her testimony does not support such a finding.

[¶ 41] The trial court found Christina Deyle to be the primary caretaker, yet found factor (d) to weigh in favor of Eric Deyle because of its speculation that Christina Deyle "may move." I agree with the majority in holding that a trial court may look into the future to determine whether factor (d) favors one parent. However, the trial court may not speculate

as to future events, when such is not supported by the record. I am of the opinion that the trial court went beyond the forward-looking approach discussed in *Lindberg v. Lindberg*, 2009 ND 136, 770 N.W.2d 252, and engaged in speculation unsubstantiated by facts in the record. As discussed above, a move by Christina Deyle in the future is without a factual basis. The trial court's finding that, because she "may move," factor (d) weighs in favor of Eric Deyle is clearly erroneous.

[¶ 42] Under factor (h), the trial court found the potential effect of any change to home, school, and community weighed "slightly" in favor of Eric Deyle. However, again, this finding is premised on speculation that Christina Deyle "may move." As pointed out, the trial court's finding is not supported by the record and is, therefore, clearly erroneous.

[¶ 43] Under factor (m), the trial court found Eric Deyle was able to provide a more stable physical and emotional environment. This is again premised on the trial court's speculation that Christina Deyle "may move." The trial court's finding that N.D.C.C. § 14–09–06.2(1)(m) favored Eric Deyle is clearly erroneous, because it is based on speculation that has no factual support in the record of this case.

3. Financial Support

[¶ 44] The trial court further erred in its findings under factor (m) when it ignores its findings under factor (b). In its analysis of N.D.C.C. § 14–09–06.2(1)(b), "[t]he ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment," the trial court found that Eric Deyle has done little to financially support his children since the parties' separation. Specifically, the trial court found:

These children have been without meaningful financial support from Eric

since June 2010. Eric earns considerably more than Christina but has provided very little financial support for the children's needs since their separation. Eric allowed the home that his children were living in go into foreclosure.

The fact that Eric failed to support his children during the separation and that he allowed the home in which they were living to go into foreclosure during the parties' separation *weigh heavily against him in this court's consideration of residential responsibility.* (Emphasis added.)

The trial court specifically found Christina Deyle "has been the children's primary caregiver during the marriage and separation," and, therefore, concluded factor (b) "*strongly* favors" Christina Deyle. Those findings are supported by the evidence in the record. And yet, after finding Eric Deyle's failure to financially support his children "weigh heavily against him" and finding Christina Deyle was the children's primary caretaker in its analysis under factor (b), the trial court then found Eric Deyle would provide a more stable physical and emotional setting for the children under factor (m).

[¶ 45] The evidence in this record supports that Eric Deyle allowed the home in which his children lived to go into foreclosure; he has not provided a stable environment for the children; he essentially caused his children to become homeless; and he has failed to pay child support since June of 2010.

[¶ 46] Therefore, I am of the opinion that the trial court's finding that Eric Deyle is able to provide a more stable physical and emotional environment than Christine Deyle and, therefore, N.D.C.C. § 14–09–06.2(1)(m), favors him is clearly erroneous.

## II

[¶ 47] I believe the trial court erroneously applied factors (d), (h), and (m) of N.D.C.C. § 14–09–06.2(1). Therefore, I respectfully dissent and would remand for a correct application of the law.

[¶ 48] MARY MUEHLEN MARING

WILLIAM F. HODNY, S.J., joins in the dissent.