Filed 7/13/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 134

Debra Krueger, n/k/a 

Deborah Bentz, Plaintiff and Appellee

v.

Gregory Krueger, Defendant and Appellant

No. 20100264

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Harlan Patrick Weir, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Diane F. Melbye, 229 First Street West, P.O. Box 1136, Dickinson, N.D. 58602-1136, for plaintiff and appellee.

Kent M. Morrow, 411 North Fourth Street, P.O. Box 2155, Bismarck, N.D. 58502-2155, for defendant and appellant.

Rhonda R. Ehlis, Special Assistant Attorney General, Courthouse, P.O. Box 130, Dickinson, N.D. 58602-0130, for Southwest Area Child Support Enforcement Unit.

Krueger v. Krueger

No. 20100264

Sandstrom, Justice.

[¶1] Gregory Krueger appeals from the district court’s order denying his motion to enforce visitation, and from the court’s subsequent order increasing his child support obligation.
(footnote: 1)  We affirm the denial of Krueger’s motion, concluding the March 2009 order remains in effect and currently restricts full visitation.  We reverse the order increasing Krueger’s child support obligation, because the district court did not make independent, specific findings regarding his net income, and remand for these findings to be made.

 

I

[¶2] Gregory Krueger and Deborah Krueger, now known as Deborah Bentz, were married in 1992 and divorced in 1999.  They had one child, L.K., who was born in 1994.  Upon divorce, Bentz was given custody of L.K., but Krueger maintained liberal visitation rights.  Numerous motions, mostly concerned with adjustments in visitation and child support, have been filed since the divorce.

[¶3] The district court amended its original judgment in 2003.  This amended judgment allowed Bentz to retain custody of L.K. and restricted Krueger’s visitation rights.  Krueger’s previously “unobstructed visitation” was altered to “reasonable visitation,” with contact time reduced and exchanges taking place at a safe visitation center.  This arrangement continued until August 2007, when an incident occurred while L.K. was visiting Krueger.  This incident allegedly turned physical, with both the 13-year-old L.K. and Krueger pushing each other.  The relationship between L.K. and Krueger became strained, and all visitation apparently ceased following this incident.

[¶4] Krueger again moved to amend the judgment, seeking “a more detailed specific visitation schedule” that would restore his visitation with L.K.  In 2009, the district court ordered visitation should resume in the form of joint counseling sessions between L.K. and Krueger.  The court directed that these sessions “shall address all unresolved issues in the relationship between [L.K.] and Gregory.”  Following these sessions, future unrestricted visitation was to proceed at the advice of the court-

appointed therapist, Shelly Hall, Ph.D.:  “Visitation shall then proceed to a neutral area outside Dr. Hall’s office . . . . Once Dr. Hall determines that the original visitation outlined in the Judgment (or any amendments thereto) is beneficial, the said visitation shall resume as previously ordered.”

[¶5] After the new order was in place, the therapy sessions quickly broke down, and the unrestricted visitation contemplated in the order never materialized.  Krueger again moved to amend the judgment and require visitation to occur.  One month later, the Southwest Area Child Support Enforcement Unit separately moved to amend the judgment to increase Krueger’s child support obligation because of an increase in income he was allegedly realizing from a new business venture.

[¶6] The district court heard testimony on both motions during the same hearing.  Dr. Hall testified the six joint counseling sessions were not successful.  She testified that L.K. refused to meet any further with his father and that it would be counterproductive to hold more sessions or force visitation between the two.  Dr. Hall further noted in her written findings, “I do not feel it would be beneficial to force him to meet his father, although I do believe it is important for him to have a relationship.  Forcing him to do this will likely only create even more resistance to this.”

[¶7] The court also interviewed L.K. in chambers.  In its written order, the court found that the 16-and-a-half-year-old L.K. had “had it” with counselors, experts, and interviews.  The district court further found that given time and autonomy, L.K. was in the best position to restore a relationship with his father.  Given these findings, the court concluded in its order denying Krueger’s motion that there was “nothing for the Court to order” and refused to establish a more specific visitation schedule between L.K. and Krueger.

[¶8] In a separate order, the district court amended its judgment to increase Krueger’s child support obligation.  The court did not specify how it arrived at its new net income figures, but rather stated its decision was based on a net monthly income of $37,515.00 and was made according to the North Dakota Child Support Guidelines.  Krueger appeals both orders to this Court.

[¶9] On appeal, Krueger argues the district court erred when it concluded L.K.’s wishes were sufficient to deny Krueger’s motion.  He also contends the court erred in amending the judgment to increase his child support obligation.

[¶10] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Krueger’s appeal was timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

 

II

[¶11] Krueger argues the district court erred by relying on L.K.’s wishes in denying Krueger’s motion to have a defined visitation schedule enforced.  The now 17-year-

old L.K. refuses to have contact with his father.  The purpose of visitation is addressed by statute:

After making an award of custody, the court, upon request of the noncustodial parent, shall grant such rights of visitation as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child’s physical or emotional health.

N.D.C.C. § 14-05-22(2) (1993).  The current version of the statute remains unchanged except that references to “custody” and “visitation” are replaced with the new terms.  
See
 N.D.C.C. § 14-05-22(2) (2009).

[¶12] Under the statute, visitation is the child’s right and is presumed to be in the child’s best interest.  
Schmidt v. Schmidt
, 2003 ND 55, ¶ 14, 660 N.W.2d 196.  “A trial court’s decision on visitation is a finding of fact that will not be reversed unless it is clearly erroneous.”  
Id.
  “A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made.”  
Id.

[¶13] While the district court may not rely solely on the child’s wishes, they are a relevant consideration in the best interests of the child analysis.  In 
Dufner v. Trottier
, 2010 ND 31, 778 N.W.2d 586, we affirmed the modification of a visitation schedule that was made after considering the wishes of the teenage children.  The district court found “that the children are frustrated with the incessant bickering between Dufner and Trottier” and took into consideration their preferences in modifying the visitation schedule.  
Id.
 at ¶ 10.  These preferences were considered in the best interests of the child analysis along with other factors such as increased travel demands associated with the children’s extracurricular activities and the escalating conflict between the parents over these travel issues.  
Id.
 at ¶ 8.

[¶14] As in 
Dufner
, the district court did not solely rely upon L.K.’s wishes in reaching its decision, but rather considered them along with other evidence in concluding what was in L.K.’s best interests.  The record indicates considerable weight was also given to the opinions and recommendations of Dr. Hall.  The district court denied Krueger’s motion in this case, meaning that the March 2009 order is still in effect.  This order suspended the past visitation schedule and made future unrestricted visitation conditional on the success of therapy sessions conducted by Dr. Hall.  After addressing “all unresolved issues in the relationship between [L.K.] and Krueger,” visitation was to progress to a neutral area.  Once Dr. Hall recommended to the court that the previous visitation schedule would be effective, only then would the court consider reinstating his previous visitation rights.

[¶15] These rights were never fully reinstated, largely because Dr. Hall was unequivocal in her testimony that the previous visitation schedule would not be beneficial to the parties.  Regarding forced visitation, Dr. Hall testified:

With my experience with adolescents, as well as adults, when we’re forced to do things that we don’t want to do, it generally creates more resistance to doing that, so in likelihood I would say that he’s probably going to become more and more resistant to doing it.  It’s not going to create a positive relationship.

When asked directly whether it would be more beneficial if contact with Krueger were initiated by L.K. or by court order, Dr. Hall responded, “In my opinion it would be much better if [L.K.] were allowed to initiate that relationship on his own when he decides he’s ready to do that.”  The court then summarized Dr. Hall’s testimony by posing a question directly to her:

Q Well, the Court bluntly is of the opinion that at this stage I don’t see that it is going to be beneficial to anybody to order a 16-and-a-half-

year-old boy—young man to be more specific—that he is going to have to resume a relationship with his father, and if he doesn’t, the sheriff’s office is going to escort him to those Court-ordered visitations.  I’m of the opinion that there is a good prospect that [L.K.] and his father are going to be able to reestablish a relationship, but there is little, if anything, the district court can do at this point by any further Court-ordered, enforced counseling or mediation sessions.  That’s basically what I’m hearing your professional opinion as being, is that correct?

A Yes.

It is apparent that the court considered L.K.’s wishes as well as the advice of Dr. Hall in deciding under the 2009 order that the previous visitation schedule between Krueger and L.K. would not be beneficial, considering the present circumstances of their relationship.

[¶16] The district court may not delegate child custody questions or related issues.  
Wolt v. Wolt
, 2010 ND 26, ¶ 38, 778 N.W.2d 786.  As in 
Wolt
, however, we construe the district court’s order as inviting the recommendation of Dr. Hall, not as a delegation of the ultimate decision.  
See
 
Wolt
, at ¶ 40.  While the order reflects that Dr. Hall’s opinion would be given great weight, the district court still retained sole authority over decisions regarding Krueger’s visitation rights.  Krueger admits that these rights have not been completely severed, but are currently stalled because of the failure of the counseling sessions.  Krueger maintains the ability to freely contact his nearly-adult son, and the parties are free to meet if and when they both agree.

[¶17] The district court properly considered the wishes of both L.K. and Krueger, as well as the testimony of Dr. Hall, in concluding that the visitation schedule modification requested by Krueger was not in L.K.’s best interests.  The failure to resolve the issues in their relationship through counseling has made the full restoration of Krueger’s previous visitation rights impermissible under the March 2009 order.  The district court’s decision was not clearly erroneous, and we affirm the denial of Krueger’s motion to amend judgment.

 

III

[¶18] Krueger argues the district court erred by amending the judgment to increase his child support obligation.

[¶19] “Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.”  
Buchholz v. Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.  “A court errs as a matter of law if it does not comply with the requirements of the child support guidelines.”  
Doepke v. Doepke
, 2009 ND 10, ¶ 6, 760 N.W.2d 131.   “As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support.”  
Lauer v. Lauer
, 2000 ND 82, ¶ 3, 609 N.W.2d 450.

[¶20] The Southwest Area Child Support Enforcement Unit moved to amend the judgment and increase Krueger’s child support obligation.  This was done after Krueger’s 2008 tax records were subpoenaed and received by the Enforcement Unit from the State Tax Commissioner.  Along with the motion to amend judgment, the Enforcement Unit submitted to the district court an affidavit from the Enforcement Unit administrator,  a completed child support guidelines worksheet, and a default order for the court to sign in the event that Krueger did not contest the motion.  The motion, affidavit, worksheet, and default order all calculated Krueger’s net monthly income to be $37,515.00, and his new child support obligation to be $2,102.00 per month.

[¶21] After receiving these materials, the district court never made any findings regarding Krueger’s net income.  The court signed the default order submitted by the Enforcement Unit, even though Krueger contested the Enforcement Unit’s motion.  This order amending the judgment contains no findings of fact or explanation of how Krueger’s net income was calculated.  Instead, after briefly introducing the matter, the order simply states, “That Paragraph V is amended to read as follows:  ‘Based on a net monthly income of $37,515.00 and pursuant to the North Dakota Child Support Guidelines, Defendant Gregory Krueger shall pay the sum of Two Thousand One Hundred Two Dollars ($2,102.00) per month for the continuing support of L.K.’”

[¶22] It is well-established that a district court’s failure to provide sufficient detail regarding its net income calculation in determining the child support obligation constitutes reversible error.  
See
 
Pember v. Shapiro
, 2011 ND 31, ¶ 35, 794 N.W.2d 435; 
Berge v. Berge
, 2006 ND 46, ¶ 8, 710 N.W.2d 417; 
Buchholz
, 1999 ND 36, ¶ 12, 590 N.W.2d 215; 
Wolf v. Wolf
, 557 N.W.2d 742, 744 (N.D. 1996).  “A proper finding of net income is 
essential
 to a determination of the correct amount of child support under the guidelines.”  
Schleicher v. Schleicher
, 551 N.W.2d 766, 769 (N.D. 1996) (emphasis added).  Even when the court uses vague figures based on adequate evidence introduced in court, there is insufficient detail to support the calculation, and we will reverse.  
Buchholz
, at ¶ 12.

[¶23] As Justice Kapsner wrote for the Court in 
Entzie v. Entzie
, “Under the child support guidelines, each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined.”  2010 ND 194, ¶ 6, 789 N.W.2d 550 (quotation and citation omitted).  As Justice Kapsner further explained for the Court in 
Sonnenberg v. Sonnenberg
, 2010 ND 94, ¶ 12, 782 N.W.2d 654, “The district court violated N.D. Admin. Code § 75-02-04.1-02(10), because it failed to state how it determined the parties’ net income.”

[¶24] In its brief, the Enforcement Unit concedes that the district court’s order is deficient, noting that “[t]he Unit concedes that the District Court did not make findings based upon the testimony that was presented . . .” and that “[t]he Unit realizes that the District Court does need to make specific findings regarding the use of Gregory Krueger’s tax returns as the basis for his gross income.”  The district court’s order cannot be sustained in the absence of detailed, specific findings regarding Krueger’s net income and child support obligation.  We reverse the order amending judgment and increasing Krueger’s child support obligation, and remand the issue to the district court to make the necessary calculations.

 

IV

[¶25] We affirm the district court’s denial of Krueger’s motion to amend judgment regarding visitation and recognize that the terms of the March 2009 order are still in effect.  Under this order, Krueger’s visitation rights have not been terminated, and he has flexibility to reestablish consistent visitation with his son.  We reverse the district court’s order to amend judgment increasing Krueger’s child support obligation, and remand to the court to make specific findings regarding the obligation and Krueger’s net income.

[¶26] Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

I concur in the result.

   Daniel J. Crothers

Kapsner, Justice, concurring in part and dissenting in part.

[¶27] I join in that part of the majority opinion denying the motion to enforce visitation.

[¶28] I respectfully dissent from that portion of the opinion which reverses the order increasing child support and remands for additional findings.  This is not a situation where the district court uses vague figures based on adequate evidence in the record.  Rather, it is a situation where the district court made a precise finding of net income based on adequate evidence in the record.

[¶29] Krueger began a new business venture in 2007.  The Child Support Enforcement Unit brought a motion to increase child support and sought financial information from Krueger.  As testified by Brad Davis, regional administrator of the child support enforcement office:

I did a calculation based upon the information that I had at that time.  I requested information from Mr. Krueger.  He provided me with some, but refused to provide his tax return, so I got what I could from the tax department and used that to do my calculation.

[¶30] Under N.D. Admin. Code § 75-02-04.1-07(9), applying N.D. Admin. Code § 75-02-04.1-07(3)(c), because Krueger failed to provide information, the district court would have come to the same amount of child support based upon Krueger’s 2008 tax return by imputing income.

[¶31] Despite Krueger’s failure to provide appropriate information, evidence in the record supports the finding and the decision of the district court.  The child support enforcement office was forced to get Krueger’s 2008 personal tax return from the tax department.  This tax return was introduced as Exhibit 1.  The tax return shows wages of $36,355 and income of $668,657 from Schedule E items, including an S corporation.  Krueger’s position has been and continues to be that only his wages from the corporation should be considered for child support despite the clear mandate of the guidelines that “gross income” means income from any source.  N.D. Admin. Code § 75-02-04.1-01.

[¶32] Income from an S corporation may be reduced from a net income calculation if the shareholder cannot exercise direct or indirect control over the corporation.  N.D. Admin. Code § 75-02-04.1-05(1)(a)(2).  Administrator Davis testified that in making the initial motion and child support calculation, he assumed that Krueger had control of the corporation, without evidence to support the assumption, on the basis that it would be up to Krueger to rebut that assumption.  The child support enforcement office is not able to access corporate returns.  He testified Krueger did later provide his office with the K-1 to the 2008 corporate return on which the Schedule E personal income was based.  The K-1 was introduced at hearing as Exhibit 2.  The K-1 shows Krueger owns slightly over 75% of the stock of the S corporation.  Krueger has not shown that income from the S corporation should be excluded from the child support calculation.  The child support guidelines worksheet calculating support based upon 2008 income was attached to the motion to increase child support.

[¶33] Krueger argued the district court was required to average five years of self-

employment income.  The guidelines specifically provide:  “When self-employment activity has not been operated on a substantially similar scale for five years, a shorter period may be used.”  N.D. Admin. Code § 75-02-04.1-05(4).

[¶34] As noted above, the guidelines impose imputation of income on obligors who refuse to provide information.  Brad Davis testified that he tried to get more information from Krueger:

THE COURT:  I have a question.  Counsel asked if you averaged the five years of self-employment income, and you said that you requested information from Mr. Krueger, but he refused to give you information.  What information did he refuse to give you?

THE WITNESS:   To tell you the exact answer, I’d have to see my file, but he provided a financial affidavit that we asked.  In it, he indicated what his income was.  I sent a followup request for pay stubs and tax returns.  If I recall, he wrote back saying he regarded those as confidential documents and didn’t want to provide them to me, and so our agency has a cooperative agreement with the State Tax Department to provide that information to us when necessary, and I requested it from the tax department, along with the corporate tax returns.  I received a call from an attorney from the Attorney General’s office that was working on behalf of the tax department that informed me that the cooperative agreement wasn’t broad enough to allow them to provide me with the corporate tax return, but they would provide me with the individual one, and I can’t recall offhand exactly what I received from them, but I would have used whatever I received.

[¶35] Davis also testified that 2008 was the first full year with meaningful information.

Q So looking back five years in this situation when he started his business in 2007 and a full year in 2008 wouldn’t really give the Court an accurate picture of what his income was for child support purposes, is that correct?

A Yeah, that’s correct.  There was no income prior to—at least some portion of 2007.  It appears that 2008 was the full—first full year of operation.

This is in accord with N.D. Admin. Code § 75-02-04.1-02(8).

[¶36] Lastly, as noted by Brad Davis, although Krueger has net income for child support purposes of $37,212 per month, his child support is actually based on net income of $12,500 per month.  No upward deviation has been sought based on the $20,000 difference between the net income shown on his tax return and the net income figure used to calculate his support.

[¶37] I would affirm the decision on child support, which is fully supported by evidence before the district court.

[¶38] Carol Ronning Kapsner

Mary Muehlen Maring

FOOTNOTES
1:    
This case was originally filed prior to the amendments to N.D.C.C. ch. 14-09, which replaced the terms “custody” and “visitation” with “primary residential responsibility” and “parenting time.”  Because this case predates the amendments, the old terms are used.