2014 ND 5

**Trista Marie CONZEMIUS, Plaintiff, Appellant and Cross–Appellee**

v.

**Chad Thomas CONZEMIUS, Defendant, Appellee and Cross–Appellant.**

No. 20130125.

Supreme Court of North Dakota.

Jan. 14, 2014.

Michael L. Gjesdahl, Fargo, N.D., for plaintiff, appellant, and cross-appellee.

Jonathan T. Garaas, Fargo, N.D., for defendant, appellee, and cross-appellant.

SANDSTROM, Justice.

[¶ 1]　Trista Conzemius appeals and Chad Conzemius cross-appeals from a divorce judgment awarding Trista Conzemius child support, denying her spousal support, determining residential responsibility for the parties' minor child, and dividing the parties' marital property. We affirm.

I

[¶ 2]　Chad and Trista Conzemius were married in 1994. Chad Conzemius is a self-employed electrician, and Trista Conzemius is an assistant professor at a university. They have one child, D.T.C., who was born in 1997. The child has lived primarily with his mother since the parties separated. The district court found the mother has flexible hours and is not required to travel as part of her work. It found the father is frequently away from home for extended periods. The court found he receives income from two sources: Wayne's Electric and Schiele Mobility. The amount of his gross annual income from these two sources is disputed.

[¶ 3]　In October 2011, Trista Conzemius sued for divorce. After a bench trial, the district court denied Trista Conzemius spousal support but awarded her primary residential responsibility of the child and $1,145 per month in child support. The court distributed the parties' marital assets and liabilities, requiring Chad Conzemius to pay an equalizing payment and to reimburse Trista Conzemius for attorney's fees.

[¶ 4]　The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

■ [¶ 5] Trista Conzemius argues the district court erred in granting the father extended summer parenting time. She argues his parenting time should be kept relatively short and other restrictions should be in place because of the safety risks his alleged alcohol abuse poses to their child.

■ [¶ 6] The standard of review for a district court's parenting time decisions is well-established:

> A trial court's determination of parenting time is a finding of fact subject to the clearly erroneous standard of review. *Krueger v. Krueger*, 2011 ND 134, ¶ 12, 800 N.W.2d 296. "In awarding visitation to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113. "We have stated visitation between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child." *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896.
> . . . .
> "[A]bsent a reason for denying it, some form of extended summer visitation with a fit non-custodial parent is routinely awarded if a child is old enough." *Dschaak v. Dschaak*, 479 N.W.2d 484, 487 (N.D.1992) . . . .

*Deyle v. Deyle*, 2012 ND 248, ¶¶ 17, 19, 825 N.W.2d 245. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Clark v. Clark*, 2006 ND 182, ¶ 18, 721 N.W.2d 6. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Wolt v. Wolt*, 2010 ND 26, ¶ 7, 778 N.W.2d 786 (quotation omitted).

[¶ 7] In response to evidence concerning the father's drinking, the court considered N.D.C.C. § 14–09–06.2(g) of the best interest factors, which concerns the mental and physical health of the parents, finding:

> At trial, much attention was devoted to Chad's drinking and emotional stability. There are indications of both alcohol abuse and emotional stress or anger. Some or all of this may well be due to the divorce, but factor g . . . favors Trista.

Although the court concluded this factor favors the mother, the mental and physical health of the parents is only one of the best interest factors. In arguing that the father's parenting time should be restricted, the mother fails to discuss the district court's consideration of the other best interest factors and how these other factors influenced its decision to award summer parenting time without including her proposed restraining provisions. For example, the court found factor (i), which gives weight to the preferences of a mature child, favors the father because of the child's mature preference for equal residential responsibility and the father's desire also to have shared responsibility. *See* N.D.C.C. § 14–09–06.2.

[¶ 8] After considering the best interest factors, the court awarded the mother primary residential responsibility and allotted the father six weeks of parenting time during the summer months. The court also stated, "Chad shall notify Trista of his intentions for the coming summer by no later than May 15 of each year."

[¶ 9] After reviewing the district court's analysis under the best interest factors, we are not left with a definite and firm conviction a mistake has been made in awarding the father summer parenting time. Moreover, in light of the father's busy work schedule during the summer months and the difficulty in communication among the parties, the court reasonably implemented guidelines to help the mother and father work out his parenting time.

[¶ 10] We conclude the court's award of parenting time to the father, as well as the summer arrangement it has implemented, is not clearly erroneous.

### III

[¶ 11] Trista Conzemius argues the district court erred in not allowing the child to testify a second time about his preference for parenting time.

[¶ 12] Review of evidentiary matters is well-established. " 'A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused.' " *Schwab v. Zajac*, 2012 ND 239, ¶ 19, 823 N.W.2d 737 (quoting *Forster v. West Dakota Veterinary Clinic, Inc.*, 2004 ND 207, ¶ 40, 689 N.W.2d 366).

[¶ 13] In response to the mother's request to have the child testify a second time about his preference for parenting time, the district court stated:

> [H]ere's my ruling and the reasons why.... [Y]esterday it was unprecedented in my experience. Typically it is much faster, there are not nearly as many questions on the part of counsel. And what I'm hearing is that [the child] has since reacted largely to some of the questions that were asked and some information that was posed to him in the process. And now he's very emotional and in this very emotional state he thinks he's changed his mind.
>
> Yesterday I think we all had a good and fair and balanced opportunity to hear from [the child] and I'm just not going to put him through anything further.
>
> So I'm not going to conduct a further interview in Chambers and I'm not going to permit that [the child] be called.
>
> And the other simple reality is that at the end of the day I need to make a best interests analysis. Certainly [the child's] preference is one of the enumerated factors, but it's only one of the factors. And I feel at this time I have heard more than enough to factor that small piece of the pie into the equation.

[¶ 14] "An abuse of discretion is never assumed; the burden is upon the party seeking relief to affirmatively establish it.... [A] trial court abuses its discretion only when it acts in an arbitrary, unconscionable, or unreasonable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Grinaker v. Grinaker*, 553 N.W.2d 204, 207 (N.D.1996).

[¶ 15] We conclude the court's decision to not allow the child to testify a second time was not arbitrary, unreasonable, or unconscionable.

### IV

[¶ 16] Trista Conzemius argues the district court, in valuing and distributing the parties' retirement assets, erroneously used their gross, pre-tax value, arguing this results in disproportionate tax impacts because more of the marital property given to her is in pre-tax value than what was given to Chad Conzemius.

[¶ 17] We have explained our review of marital property distributions:

A district court's distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard of review.... We view the evidence in the light most favorable to the district court's findings, which are presumptively correct....

A district court is required to make an equitable distribution of divorcing parties' marital property and debts. All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital property before making an equitable distribution. Marital property ordinarily is valued as of the date of trial. After the court values the property, the court must then equitably divide the entire marital estate under the *Ruff–Fischer* guidelines, which require the court to consider the following factors in the division:

The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

Our law does not require a set formula or method for dividing marital property; rather, the division is based on the particular circumstances of each case. A property division need not be equal to be equitable, but a substantial disparity must be explained. A lengthy marriage generally supports an equal division of all marital assets.

*Hoverson v. Hoverson,* 2013 ND 48, ¶¶ 8–10, 828 N.W.2d 510 (citations omitted).

### A

[¶ 18] In considering whether potential taxes should be measured in a marital property division, we have held:

"[A] properly informed trial court must take tax effects into account when it determines divorce transactions." *Dick v. Dick, supra,* 414 N.W.2d [288,] 291 [ (N.D.1987) ]. "We see no error in considering tax liabilities already incurred by divorcing spouses." *Id.,* at 291. A trial court should amend its property distribution if it concludes that an adverse tax consequence would result, which could be avoided by a different equitable allocation of property. *Gronneberg v. Gronneberg,* 412 N.W.2d 84 (N.D.1987). However, we agree with the decision in *Brockman v. Brockman,* 373 N.W.2d 664, 666 (Minn.App.1985), holding that the trial court improperly considered the income tax consequences of a future withdrawal of funds from a pension plan when there were no current plans to withdraw funds[.]

*Kaiser v. Kaiser,* 474 N.W.2d 63, 69 (N.D. 1991). *See also Linrud v. Linrud,* 1998 ND 55, ¶ 15, 574 N.W.2d 875 ("While we acknowledge that a properly informed trial court must consider tax effects in a divorce, the tax consequences should only be considered when the liability is certain to occur within a short time following the dissolution.").

[¶ 19] Trista Conzemius did not raise this issue with the district court. Even if it had been raised, she has identified no plans to retire or to withdraw funds from the pension plans within "a short time." *See Kaiser,* 474 N.W.2d at 69–70. Instead, she is likely to withdraw funds in the distant future. As a result, any consideration of the income tax consequences of

future withdrawals from the pension plans would not be "necessary nor probable, but merely conjectural." *See id.* at 69 (citation omitted). Because the district court's division of the marital property is consistent with *Hoverson* and *Kaiser,* we are not left with a definite and firm conviction the court made a mistake in not considering the future tax consequences of the property division.

B

[¶ 20] Trista Conzemius argues the district court clearly erred in ignoring Chad Conzemius's waste and dissipation when dividing the marital property. Among other things, she claims he improperly supplied his girlfriend with free living space and has wasted significant amounts of money on alcohol.

[¶ 21] In *Hoverson,* we gave examples of economic fault:

In *Halvorson v. Halvorson,* 482 N.W.2d 869 (N.D.1992), we affirmed the trial court's finding of economic fault. In that case, Glenn Halvorson transferred cattle, machinery, and 40 acres of land to the parties' son without consideration, without his wife's consent, and against her desire to treat all of the children equally....

In *Peterson v. Peterson,* 1999 ND 191, 600 N.W.2d 851, we affirmed the trial court's finding Howard Peterson committed marital and economic misconduct by forging his wife's name to a check issued for the sale of their former home and depositing that check into his personal account.

*Hoverson v. Hoverson,* 2001 ND 124, ¶¶ 18–19, 629 N.W.2d 573.

[¶ 22] The district court found there is no proof Chad Conzemius's other relationship became physical before the separation, and his lifestyle and expenditures were not found to rise to the level of economic fault or waste. The court found fault is not a significant consideration. A court's finding of economic or non-economic fault is a finding of fact subject to the clearly erroneous rule. *See Halvorson v. Halvorson,* 482 N.W.2d 869, 871–72 (N.D. 1992). Buying alcohol and providing a girlfriend with benefits may not rise to the same level of economic fault exemplified in *Hoverson* and do not lead us to conclude the district court clearly erred. It is important to remember that "clearly erroneous" is a deferential standard. Often, on the basis of the evidence before it, a district court can decide either way on an issue without being clearly erroneous. In most of the economic fault cases cited by Trista Conzemius, this Court was affirming the finding of the district court. The one reversal, *Hoverson,* involved a lack of evidence to support the district court's finding of economic fault resulting in waste or reduction in the net marital estate. Here we are not left with a definite and firm conviction a mistake was made by the district court.

C

[¶ 23] Trista Conzemius argues the district court clearly erred by undervaluing the parties' interest in Schiele Mobility.

[¶ 24] Schiele Mobility's accountant testified the company was incorporated in the fall of 2010. She testified Schiele Mobility works under subcontracts from other companies primarily to provide water hauling in the oil fields in the western part of the state. She testified Chad Conzemius initially invested $30,000 in Schiele Mobility and owns a 20 percent share interest in the company.

[¶ 25] In determining the value of Schiele Mobility, the court found:

Schiele Mobility was valued by Leonard Sliwoski as of December 31, 2011. This is the only expert opinion as to valuation in the record. Trista argues subsequent results suggest a much higher value. . . .

The financial information Trista relies on stops on August 31, 2012. The numbers for the first eight months of 2012 are impressive, but the valuation of a business requires more than a review of its most recent balance sheet. The evidence offered by Trista does not provide more, and is therefore generally insufficient. Furthermore, evidence was offered indicating the numbers Trista relies on later changed dramatically.

Brad Schiele testified that recent numbers are "way off," due to high payroll combined with a dramatic (hopefully temporary) drop in revenues. He opined the business is worth less today than it was when Sliwoski valued it. . . .

[¶ 26] Considering evidence the value of Schiele Mobility may have gone up as well as evidence its value may have gone down since the valuation, the district court decided to adopt Sliwoski's valuation, finding "the evidence does not meaningfully support either an upward or a downward deviation from this result." We conclude the district court's valuation is supported by the evidence and are not left with a firm conviction a mistake has been made. We will not substitute our own judgment for that of the district court when it comes to marital asset valuation, especially when the valuation involves a complicated matter such as the valuation of the start-up corporation at issue in this case.

D

[¶ 27]On cross-appeal, Chad Conzemius argues the district court clearly erred by including in the marital estate $40,500 for three Schiele Mobility distributions paid to him in March, February, and June of 2012. He claims that this money had already been spent on marital debt and that at the time of trial, it was gone and no such personal property existed which was capable of being valued. As a result, he argues the court failed to comply with *Grinaker v. Grinaker*, 553 N.W.2d 204 (N.D.1996), in which we held, "Common sense dictates that marital property be valued as of the date of trial, rather than the date of distribution. The trial court hears the evidence on value at trial, and the evidence will ordinarily give a current value for the property." *Id.* at 208–09.

[¶ 28] With regard to the 2012 distributions from Schiele Mobility, the district court found:

At least in 2012, it is undisputed that all the money went to Chad, leaving Trista with only the payments on the loan obtained to make the initial investment. This was not right, and does require an adjustment. For these reasons, the 2012 distributions will be regarded as marital assets distributed to Chad, as Trista has proposed.

[¶ 29] This decision is consistent with *Grinaker's* requirement that property is to be valued at the time of trial, because *Grinaker* only prohibits courts from valuing property upon the basis of that property's speculative worth at some future date. *See id.* at 209 ("When valuing items like the mutual funds and variable annuities here, any evidence presented at trial on value for some future date would have been purely speculative.").

[¶ 30] The district court in this case did not make speculative findings about the future value of the distributions. The court found that all the money from Schiele Mobility in 2012 went to Chad Conzemius, leaving Trista Conzemius with only the payments on the loan. Recogniz-

ing this, the court included an additional $40,500 in the marital estate. This is consistent with North Dakota law. *See Barth v. Barth*, 1999 ND 91, ¶ 16, 593 N.W.2d 359 ("[I]f a marital asset has been converted into other marital assets or to a reduction of marital debt, the mere fact that an asset has been in some way converted to another form does not necessarily mean . . . the net marital estate has been reduced." (quotation omitted)).

### E

[¶ 31] We are not left with a definite and firm conviction the court made a mistake in distributing the parties' marital estate. We conclude the property distribution is not clearly erroneous.

### V

[¶ 32] Trista Conzemius argues the district court understated the father's annual income for child support.

[¶ 33] We have articulated the standard of review for child support determinations:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines. . . .

. . . N.D. Admin. Code § 75–02–04.1–02(10) requires "a child support order include a statement of the obligor's net income and 'how that net income was determined.'"

*Buchholz v. Buchholz*, 1999 ND 36, ¶¶ 11–12, 590 N.W.2d 215.

[¶ 34] The child support guidelines provide the following guidance for determining self-employment income.

Self-employment activities may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income. When self-employment activity has not been operated on a substantially similar scale for five years, a shorter period may be used.

N.D. Admin. Code § 75–02–04.1–05(4).

If tax returns are unavailable or the court finds the returns unreliable, the guidelines require the court to use profit and loss statements which more accurately reflect the obligor's current self-employment income, in order to properly calculate income.

*Entzie v. Entzie*, 2010 ND 194, ¶ 6, 789 N.W.2d 550.

[¶ 35] The district court found the father receives income from two sources: Wayne's Electric and Schiele Mobility. The father provided, and the court considered, tax returns as well as other information concerning his self-employment income.

[¶ 36] The court ultimately found that because the father is self-employed and his income varies, a five-year average is appropriate in determining his annual income for child support purposes. Nevertheless, after calculating a five-year average, the court added the estimated additional income the father receives from personal use of the company property. The court found that the bookkeeping system employed by Wayne's Electric is lacking to nonexistent and that the father derives benefits in addition to his direct compensation, including personal use of business vehicles. It

found he clearly uses business accounts to pay non-business expenses and, on occasion, barters by trading services for non-monetary compensation. The court found $65,000 is a reasonable estimate of the income and other economic benefits the father receives in an average year from his business, Wayne's Electric.

[¶ 37] With regard to the father's income from Schiele Mobility, the court recognized that predicting the future of Schiele is inherently difficult, so for child support purposes, the court found it is reasonable to assume the next several years will be comparable to the past. The court found that in 2011, the father received distributions totaling $34,000. As of August 31, 2012, the court found the father had received additional distributions totaling $40,500. It found that the business thereafter encountered a period with significantly increased expenses and reduced revenues and that as of trial, no further distributions in 2012 were anticipated. The court found that the income projections urged by the mother were not adequately supported by the evidence and that $40,000 was a reasonable estimate of the annual income the father was likely to receive in the near future from Schiele Mobility.

[¶ 38] The district court "clearly set forth how it arrived at the amount of income and level of support." *See Buchholz,* 1999 ND 36, ¶ 12, 590 N.W.2d 215. We are not left with a definite and firm conviction the court made a mistake in its analysis of the father's self-employment income from Wayne's Electric and Schiele Mobility under the Child Support Guidelines.

## VI

[¶ 39] Trista Conzemius argues the district court erred by not awarding spousal support.

[¶ 40] We have explained the standard of review for spousal support:

A spousal support award is a finding of fact that will not be set aside on appeal unless clearly erroneous. Under N.D.C.C. § 14-05-24.1, a district court may require one party to pay spousal support to the other party for any period of time after taking into consideration the circumstances of the parties. In contemplating an award of spousal support, a court must consider the needs of the spouse seeking support and the ability of the other spouse to pay in conjunction with the *Ruff–Fischer* guidelines. The court is not required to make a finding on each *Ruff–Fischer* factor, but the court must explain its rationale for its determination.

... "Permanent spousal support is appropriate 'when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development ... lost during the course of the marriage.'" "'[P]ermanent spousal support ... provide[s] traditional maintenance for a spouse incapable of adequate rehabilitation or self-support.'"

*Hoverson,* 2013 ND 48, ¶¶ 14–15, 828 N.W.2d 510 (citations omitted).

[¶ 41] In *Becker,* this Court discussed whether the income determinations for child support and spousal support must be equal:

To determine a child support obligation the court must apply the child support guidelines to calculate the obligor's net income. *Halberg [v. Halberg],* 2010 ND 20, ¶ 10, 777 N.W.2d 872. In deciding whether to award spousal support, the court considers the *Ruff–Fischer* factors, which include the parties' earning ability and the needs of the spouse seeking support and the ability of the other spouse to pay. *Duff [v. Kearns–Duff],*

2010 ND 247, ¶ 14, 792 N.W.2d 916. Under those authorities, a party's earning ability will not necessarily be the same as the party's net income under the child support guidelines.

*Becker v. Becker*, 2011 ND 107, ¶ 15, 799 N.W.2d 53.

[¶ 42] When making spousal support decisions, the *Ruff–Fischer* guidelines must be considered:

This court has long held the trial court must consider the *Ruff–Fischer* guidelines in deciding whether to award spousal support.... Although the trial court does not need to make specific findings as to each guideline, it must specify a rationale for its determination.

*Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377.

[¶ 43] In conducting the *Ruff–Fischer* analysis, the court made a number of findings, including that the parties had a long-term marriage; that almost everything of value was accumulated during the marriage, including Wayne's Electric and Schiele Mobility; that Trista Conzemius currently receives a base salary of $63,310 per year, very close to what Chad Conzemius is estimated to make through his work as an electrician; that the parties are close in age, and health is not a major concern for either party; that there is no reason to conclude the future is less promising for a college professor than for an electrician; that both parties have good job security, but Trista Conzemius's work provides superior benefits, including highly superior retirement benefits; that fault is not a significant consideration because there is no proof Chad Conzemius's other relationship became physical until after the separation and because his lifestyle and expenditures are not found to rise to the level of economic fault or waste; and, that his expenses are probably low and hers high.

[¶ 44] The court found Chad Conzemius's future earning potential is higher than Trista Conzemius's only if continued distributions from Schiele Mobility are projected. He is a minority shareholder in the business. The court found the future profit of a new business is inherently problematic; indeed, it is generally regarded as so speculative that no profit may be claimed. *See also Truscott v. Peterson*, 78 N.D. 498, 518, 50 N.W.2d 245, 257 (1951) ("prospective profits of a new business or enterprise are generally regarded as being too remote, contingent, and speculative to meet the legal standard of reasonable certainty"). The court found that in this case there is particular cause for uncertainty because the business operates in a very volatile market and has no long-term contracts, changes in technology or delivery could destroy the niche it currently exploits, competition is likely to increase, and customers could acquire internal water-hauling capacity. The court ultimately found long-term projections from Schiele Mobility are too speculative to support an award of permanent spousal support. This finding is supported by the evidence. The court also awarded Trista Conzemius one-half the value of Chad Conzemius's ownership interest in Schiele Mobility.

[¶ 45] The court specifically found, "The disparities or circumstances that typically compel support are not present in this case." On this record, we are not left with a definite and firm conviction that the court made a mistake in deciding not to award spousal support or that its findings were induced by an erroneous view of the law. Although Schiele Mobility disbursements were included in the father's income for purposes of child support, the district court's decision that this income is too uncertain for an award of spousal support is nevertheless proper. *See Becker*, 2011 ND 107, ¶ 15, 799 N.W.2d 53 ("In deciding whether to award spousal support, the

court considers the *Ruff–Fischer* factors, which include the parties' earning ability and the needs of the spouse seeking support and the ability of the other spouse to pay.... [A] party's earning ability will not necessarily be the same as the party's net income under the child support guidelines.").

[¶ 46] Trista Conzemius nevertheless claims the court erred in failing to award spousal support, because the court allegedly misapplied the notion of "double-dipping" when it found:

> [E]ven if there was a reasonably certain basis for estimating further distributions over the long haul, it would not follow Trista is entitled to half the present value plus a lifetime of future payments. This violates the adage you can not have your cake and eat it too. If Chad now pays fair value for Trista's share, he should stand to realize any future profits, just as he will suffer any future losses, divestitures or failures.

She cites to a Wisconsin case, arguing the double-dipping injustice is real when the asset is the income, such as retirement accounts and pension plans, but does not apply when the property at issue is a business, which retains its appraised value regardless of the income it generates year by year. *See McReath v. McReath,* 2011 WI 66, 335 Wis.2d 643, 800 N.W.2d 399.

[¶ 47] It is not necessary to address Trista Conzemius's double-dipping argument at this time, because we have already concluded the district court did not err in finding Chad Conzemius's income from Schiele Mobility is too uncertain to include in an award of spousal support.

## VII

[¶ 48] Finally, Chad Conzemius argues he should not be required to reimburse Trista Conzemius for attorney's fees.

[¶ 49] We have stated the law for awarding attorney's fees in a divorce action:

> Under N.D.C.C. § 14–05–23, a district court has discretion to award attorney's fees in an action for divorce. A district court's decision will not be disturbed on appeal unless the appealing party establishes the court abused its discretion. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law.

In *Jondahl [v. Jondahl],* 344 N.W.2d [63,] 73 [ (N.D.1984) ], this Court described relevant factors for awarding attorney's fees:

> [I]n determining the amount of attorney's fees to be paid by the opposing party, the trial court should consider the property owned by each party as a result of the property division, the relative income, whether the property is liquid or of fixed assets, and whether or not the actions of the parties unreasonably increased the time spent on the case.

*Hoverson,* 2013 ND 48, ¶¶ 24–25, 828 N.W.2d 510 (citations and quotation omitted).

[¶ 50] In finding attorney's fees for Trista Conzemius, the court found:

> The parties have comparable capacity to pay attorney's fees. Trista has borrowed most [of] her litigation costs from her parents. Chad has used marital assets to pay for at least a portion of his fees. Furthermore, the positions (valuations) initially taken by Chad were extreme, and his discovery responses were often lacking. All of this did significantly increase the cost of this litigation.

[¶ 51] The district court's decision recognized the parties' ability to pay, and the court factored into its decision the actions taken by Chad Conzemius that significantly increased the cost of the litigation. The court's decision to award Trista Conzemius attorney's fees was the product of a rational mental process and was not arbitrary, capricious, or unreasonable, and was not a misapplication or misinterpretation of law. We therefore conclude the court did not abuse its discretion in awarding attorney's fees.

### VIII

[¶ 52] We affirm the judgment.

[¶ 53] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.

[¶ 54] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.

KAPSNER, Justice, concurring in part and dissenting in part.

[¶ 55] I concur in Parts II, III, IV, V, and VII of the majority opinion. I respectfully dissent from Part VI of the majority opinion. Because I believe that the district court's analysis of spousal support is based upon a legal error, I would reverse and remand this issue for a correct analysis.

[¶ 56] Trista Conzemius requested permanent spousal support, and the district court denied any spousal support. The *Ruff–Fischer* guidelines are the basis for providing spousal support under our current law. *See Ruff v. Ruff,* 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952); *Fischer v. Fischer,* 139 N.W.2d 845, 852 (N.D.1966). In paragraph 43, the majority opinion sets out many of the findings which the district court made under the *Ruff–Fischer* guidelines.

[¶ 57] There are several other findings relative to Chad Conzemius's income that appear in the district court's findings: Although "Chad receives an annual draw or salary from Wayne's Electric[,]"

The bookkeeping system employed by Wayne's Electric is lacking to non-existent. Like most small business owners, Chad does derive benefits in addition to his direct compensation. The vehicles he uses for business purposes are also available for his personal use. The lines between business and personal expenses are not always bright. To some extent, Chad clearly does use business accounts to pay non-business expenses. On occasion, he is also able to barter by trading services for non-monetary compensation.

In other words, Chad Conzemius controls the flow of income and other benefits from his primary source of income, and the amount appearing on his tax return is not reflective of his total compensatory package.

[¶ 58] The most serious problem with the district court's analysis is the failure to consider an entire income stream from Schiele Mobility. As the court noted, "This is a long-term marriage. Almost everything of value was accumulated during that marriage, including Wayne's Electric and Schiele Mobility." Instead of recognizing the income stream that Schiele Mobility had been generating since its inception for purposes of spousal support, the district court compared only Trista Conzemius's income as a professor to Chad Conzemius's income as an electrician. "Chad's future earning potential is higher only if continued distributions from Schiele Mobility are projected." It is legal error under the *Ruff–Fischer* guidelines, which direct the court to consider the income-

producing capacity of property, to assume that an established stream of income will not exist.

[¶ 59] The district court cites, as support for ignoring an income stream, a 1951 case dealing with the measure of damages in a negligence case, an error repeated by the majority opinion. *See Truscott v. Peterson*, 78 N.D. 498, 518, 50 N.W.2d 245, 257 (1951). The *Truscott* case is simply irrelevant to the consideration of spousal support where the *Ruff–Fischer* guidelines require consideration of the parties' earning abilities and the income-producing capacities of the parties' property. *See Becker v. Becker*, 2011 ND 107, ¶ 28, 799 N.W.2d 53.

[¶ 60] For child support purposes, the district court made the following findings. "Chad receives income from two sources: Wayne's Electric and Schiele Mobility." "At least in recent years, Chad has been receiving cash distributions as a result of the 20 percent interest he holds in Schiele Mobility. This entity is a subchapter S corporation, so income is generally passed through to shareholders in proportion to their ownership interests. In 2011, Chad received distributions totaling $34,000.... As of August 31, 2012, Chad had received additional distributions totaling $40,500."

[¶ 61] "With such a short track record, predicting the future of Schiele Mobility is inherently difficult. In the long term, it may thrive or it may fail. For child support purposes, however, it is reasonable to assume the next several years will be comparable to the past.... $40,000 is a reasonable estimate of the annual income Chad is likely to receive in the near future from Schiele Mobility."

[¶ 62] In *Becker*, 2011 ND 107, ¶ 15, 799 N.W.2d 53, this Court indicated that a party's net income for child support will not necessarily be the same as earning ability for spousal support. The calcula-

tions may be different, but none of the cases cited in the majority opinion are support for entirely ignoring the income-earning capacity of property assigned to one of the spouses. This is an error of law under the *Ruff–Fischer* guidelines.

[¶ 63] The majority opinion quotes from the district court's opinion, which seems to confirm that the district court is not willing to consider income-producing capacity of property under the *Ruff–Fischer* guidelines for purposes of spousal support:

[E]ven if there was a reasonably certain basis for estimating further distributions over the long haul, it would not follow Trista is entitled to half the present value plus a lifetime of future payments. This violates the adage you can not have your cake and eat it too. If Chad now pays fair value for Trista's share, he should stand to realize any future profits, just as he will suffer any future losses, divestitures or failures.

The *Ruff–Fischer* guidelines are not alternative guidelines to be applied to either property or to spousal support. They are guidelines to be applied by the district court to both property division, *Donlin v. Donlin*, 2007 ND 5, ¶ 11, 725 N.W.2d 905, and to spousal support. *Id.* at ¶ 15.

[¶ 64] If there is a reasonably certain basis for estimating further distributions from income-producing property over the long haul, a divorce court must consider that information under the *Ruff–Fischer* guidelines in deciding whether to award spousal support, in what amount, and over what duration.

[¶ 65] Either Wayne's Electric or Schiele Mobility may thrive and flourish or may fail in the future. However, that is not an appropriate basis to fail to grant spousal support when both have established income streams in the recent past.

Instead, if an award of spousal support is granted, and if the future proves less successful, the court may modify its order under N.D.C.C. § 14–05–24.1, when there is a material change in circumstances. *Rothberg v. Rothberg*, 2007 ND 24, ¶ 6, 727 N.W.2d 771.

[¶ 66] The majority opinion is misleading when it says that the court awarded Trista Conzemius one-half the value of Chad Conzemius's ownership interest in Schiele Mobility. This is no more accurate than saying it awarded Chad Conzemius one-half the value of Trista Conzemius's pension. The district court awarded the entire interest in Schiele Mobility to Chad Conzemius. The district court did order a cash payment to Trista Conzemius to try to equalize distribution of the net marital estate. But that does not change the requirement under the *Ruff–Fischer* guidelines that both the earning ability of the parties and the income-producing capacity of the distributed property be considered for spousal support.

[¶ 67] Because the district court made a legal error in its analysis of spousal support, I would reverse and remand for consideration of this issue.

[¶ 68] MARY MUEHLEN MARING, S.J., concurs.